**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**KATIE ARNETTE STRAIGHT,**

      **Plaintiff,**

**v.**                                      **Civil Action No.: 1:10-CV-33**
                                              **JUDGE KEELEY**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10], AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**

## I.      INTRODUCTION

On February 25, 2010, Plaintiff Katie Arnette Straight ("Plaintiff"), by counsel Michael G. Miskowiec, Esq., filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On April 30, 2010, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On June 2, 2010 and June 28, 2010, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [10] [12]. On July 6, 2010, Plaintiff filed a Reply [14]. Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND AND REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

### A. Procedural Background

On October 3, 2007, Plaintiff applied for disability insurance benefits, alleging disability since August 30, 2005. Tr. at 15, 62-63 & 96-97. On January 21, 2009, the United States Administrative Law Judge ("ALJ") held a hearing, and Plaintiff testified under oath. Tr. at 29-61. *See* 20 C.F.R. § 404.929 (hearing before an administrative law judge). On August 27, 2009, the ALJ issued an unfavorable decision to Plaintiff, finding her not entitled to a period of disability. Tr. at 12-28. On January 26, 2010, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Tr. at 1-4. *See* 20 C.F.R. § 404.967 (Appeals Council review--general); *see also* 20 C.F.R. § 404.981 (Effect of Appeals Council's decision or denial of review). Plaintiff now requests judicial review of the ALJ decision denying her application for disability.

### B. Standard for Judicial Review of a Decision by the Administrative Law Judge in a Disability Case

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v.*

> *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). In applying these legal standards, the Court reviews the decision by the ALJ.

### C.      Standard for Disability and Five-Step Evaluation Process

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One:      Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two:      Determine whether the plaintiff has a severe impairment;

Step Three:    Determine whether the plaintiff has a "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:     Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five:     Consider residual functional capacity assessment, age, education, and work experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and coming to a decision, the ALJ makes findings of fact and conclusions of law. This Court will review the decision by the ALJ to determine whether it is supported by substantial evidence, in accordance with 42 U.S.C. § 405(g) and *Hays*.

**D.     Review of ALJ Application of Five-Step Evaluation Process and Whether it is Supported by Substantial Evidence**

**1.     Step One: Determine whether the Plaintiff is Engaging in Substantial Gainful Activity**

At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled...

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is

realized....

If you are working or have worked as an employee...[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity...

[I]f you are self-employed [w]e will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity...

If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled *regardless of your medical condition* or your age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1572; *see also* 20 C.F.R. § 404.1574(a) (evaluation guide for employees who are not self-employed); *see also* 20 C.F.R. § 404.1575(a)(2) (evaluation guide if you are self-employed); *see also* 20 C.F.R. § 404.1520(b) (emphasis added). The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. Tr. at 17.

2.      **Step Two: Determine whether the Plaintiff has a Severe Impairment**

At the second step, we consider the medical severity of your impairment(s)...[A] severe impairment...[is] any impairment or combination of impairments which **significantly limits your physical or mental ability to do basic work activities**...We will not consider your age, education, and work experience...

Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months...

An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities. **Basic work activities...mean[s] the abilities and aptitudes necessary to do most jobs. Examples of these include--1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding,**

**carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.**

*See* 20 C.F.R. § 404.1520; *see also* 20 C.F.R. § 404.1509; *see also* 20 C.F.R. § 404.1521; *see also*

*Luckey v. U.S. Dept. of Health & Human Services*, 890 F.2d 666 (4th Cir. 1989). The ALJ found

Plaintiff to have the following severe impairments: fibromyalgia, psoriatic arthritis, obesity, and a

depressive disorder. Tr. at 17. In Plaintiff's reply brief, Plaintiff argued that the ALJ did not explain

why he concluded that her depression was severe. Pl. Doc. 14 at 2. In his decision, the ALJ said that

Plaintiff's impairments are "severe" because they are not slight and have more than a minimal effect

on Plaintiff's residual functional capacity, as set forth in SSR 85-28. Tr. at 17.

### 3.    Step Three: Determine whether the Plaintiff has a "Listed" Impairment

At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. *See* 20 C.F.R. § 404.1520(a).

The Listing of Impairments...describes...impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. *See* 20 C.F.R. § 404.1525(a).

Most of the listed impairments are permanent or expected to result in death. *See* 20 C.F.R. § 404.1525(a).

We need evidence from acceptable medical sources (e.g. licensed physicians) to establish whether you have a medically determinable impairment(s). *See* 20 C.F.R. § 404.1513(a).

To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies ***all of the criteria*** in the listing. *See* 20 C.F.R. § 404.1513(a) (emphasis added).

***An impairment that manifests only some of those criteria, no matter***

> *how severely, does not qualify*. *See Sullivan v. Zebley*, 493 U.S. 521,
> 110 S. Ct. 885 (1990) (emphasis added).

The ALJ found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals a listing impairment. Tr. at 18.

### \* Residual Functional Capacity Assessment \*
### (Needs to be Determined Before Proceeding to Step Four)

> If your impairment(s) does not meet or equal a listed impairment, we
> will assess and make a finding about your residual functional
> capacity based on all the relevant medical and other evidence in your
> case record...We use our residual functional capacity assessment at
> the fourth step of the sequential evaluation process to determine if
> you can do your past relevant work...and at the fifth step of the
> sequential evaluation process (if the evaluation proceeds to this step)
> to determine if you can adjust to other work...

> Residual functional capacity assessment. Your impairment(s), and
> any related symptoms, such as pain, may cause physical and mental
> limitations that affect what you can do in a work setting. Your
> residual functional capacity is the most you can still do despite your
> limitations. We will assess your residual functional capacity based on
> all the relevant evidence in your case record....

> Residual functional capacity is a measurement of the most a claimant
> can do despite his limitations. *See* 20 C.F.R. § 404.1545(a).
> According to the Social Security Administration, residual functional
> capacity is an assessment of an individual's ability to do sustained
> work-related physical and mental activities in a work setting on a
> regular and continuing basis. A 'regular and continuing basis' means
> 8 hours a day, for 5 days a week, or an equivalent work schedule.
> Social Security Regulation (SSR) 96-8p. Residual functional capacity
> is to be determined by the ALJ only after he considers all relevant
> evidence of a claimant's impairments and any related symptoms (*e.g.*,
> pain). *See* 20 C.F.R. § 404.1529(a).

*See* 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 404.1545(a); *see also Hines v. Barnhart*, 453 F.3d

559 (4th Cir. 2006). The ALJ reviewed Plaintiff's medical evidence, impairments, physical and

mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the

ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 19-20.

Specifically, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except for work which requires any crawling, any climbing of ladders / ropes / scaffolds, more than occasional balancing, stooping, kneeling, crouching or climbing of ramps / stairs, concentrated exposure to extreme cold / heat, vibration, fumes, odors, dusts, gases, poor ventilation or hazards (machinery, heights, etc.), or more than simple, unskilled tasks. Tr. at 19-20.

> *Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work...

> *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met...If someone can do light work, we determine that he or she can also do sedentary work.

*See* 20 C.F.R. § 404.1567 (italics added).

### a. The ALJ's Evaluation of Plaintiff's Residual Functional Capacity and the Opinion of the State Agency Psychologist

Plaintiff contends that the ALJ erred in failing to find nonexertional limitations, such as chronic pain, resulting from Plaintiff's psoriatic arthritis or fibromyalgia and that the ALJ improperly rejected the opinion of the state agency psychologist, Harry W. Hood, M.S. Pl. Doc. 11

at 1 & 8-11.

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. *See* § 404.1512(b)(6).

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources...

> 20 C.F.R. § 404.1527(f)(2)

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527.

> *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

The ALJ reviewed Plaintiff's medical history, credibility, pain symptoms, and daily activities

to determine Plaintiff's residual functional capacity and to determine whether the evidence in the

record supported, and was consistent with, the opinion of the state agency psychologist. Tr. at 17-26.

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and § 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p. The ALJ used the two-step process and factors in SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility, her residual functional capacity, and the opinion of the state agency psychologist. Tr. at 17-26.

### (1)      The ALJ's Review of the Record from 2005 through 2008

On September 22, 2005, Plaintiff gave birth to a son with no postpartum or operative complications. Tr. at 245.

On June 3, 2006, Plaintiff had an emergency room visit with Curt Cackovic, D.O., for epigastric heartburn. Tr. at 235-36. Plaintiff reported experiencing severe heartburn since becoming pregnant. Tr. at 235. Plaintiff said she does not drink alcohol but consumes a significant amount of chocolate. Tr. at 235. Plaintiff said she smokes half a pack of cigarettes a day. Tr. at 235. Plaintiff

said she was currently breast feeding. Tr. at 235. Dr. Cackovic recommended a treatment plan of avoiding alcohol, caffeine, nicotine, chocolate, and fatty foods. Tr. at 236.

On August 29, 2007 and January 9, 2008, laboratory results revealed negative RA factor, ANA, and sedimentation rate. Tr. at 275-76.

On October 1, 2007, Plaintiff had an evaluation with Michael M. Rezaian, M.D., a rheumatologist. Tr. at 184-85. Plaintiff reported that for nine years she has had complaints of pain, stiffness, and swelling in her lower back on both sides. Tr. at 184. Plaintiff said that the complaints have been getting worse for the last few years. Tr. at 184. Dr. Rezaian noted swelling and tenderness, mostly on the left side of her wrists, proximal interphalangeal joints (PIPs), and metatarsophalangeal joints (MTPs). Tr. at 184-85. Dr. Rezaian noted tenderness in her metacarpophalangeal (MCPs) and her hips over the left trochanteric bursa. Tr. at 185. Dr. Rezaian noted tenderness in her shoulders and ankles, more on the left side. Tr. at 185. Dr. Rezaian noted left sided swelling and tenderness in her knees and that her elbows were tender but with no swelling. Tr. at 185. Dr. Rezaian diagnosed sacroiliac joint inflammation with fibromyalgia. Tr. at 184. Dr. Rezaian recommended x-rays of her sacroiliac and lumbar spine and to follow-up in six months. Tr. at 184-85.

On October 3, 2007, Plaintiff applied for disability insurance benefits, alleging disability since August 30, 2005. Tr. at 15, 62-63 & 96-97.

On October 10, 2007, x-rays of the sacroiliac and lumbar spine revealed no bone abnormalities and that the interspaces are well-maintained. Tr. at 283-84.

On January 8, 2008, Plaintiff had a follow-up examination with Dr. Rezaian. Tr. at 186-88. Dr. Rezaian diagnosed Plaintiff with psoriatic arthritis, fibromyalgia, and trochanteric bursitis. Tr.

at 186. Dr. Rezaian noted that Plaintiff has pitting in her nails and swelling in her right knee. Tr. at 186.

On February 12, 2008, Cherry B. Lobaton, M.D. completed a form regarding Plaintiff. Tr. at 285-89. Dr. Lobaton stated that Plaintiff was seen on August 29, 2007 for concerns of multiple joint pain, and that she was referred to Dr. Rezaian. Tr. at 285. Dr. Lobaton noted that Dr. Rezaian diagnosed Plaintiff with fibromyalgia and sacroiliac joint inflamation. Tr. at 285. Dr. Lobaton found that Plaintiff had normal gait and station, normal fine motor ability in her hands, normal gross motor ability, and no presence of any muscle atrophy. Tr. at 286. Dr. Lobaton found that Plaintiff had tenderness in her neck, knees, and chest wall / rib cage. Tr. at 286 & 289. Dr. Lobaton found normal reflexes, motor strength, coordination, and mental status. Tr. at 288. Dr. Lobaton further found normal respiratory and normal heart sounds. Tr. at 289. Dr. Lobaton noted no edema and no problems with extremities or circulation. Tr. at 289. Dr. Lobaton diagnosed GERD, obesity, and fibromyalgia. Tr. at 289. Dr. Lobaton noted no record of Plaintiff being diagnosed with lupus. Tr. at 289.

On May 14, 2008, Fulvio Franyutti, M.D., a State Agency Medical Consultant, performed a physical residual capacity assessment on Plaintiff and found that she could perform light work with limitations. Tr. at 320-27. Dr. Franyutti found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday. Tr. at 321. Dr. Franyutti also found that Plaintiff had no limitations for reaching in all directions (including overhead), no limitations for handling (gross manipulation), no limitations for fingering (fine manipulation), and no limitations for feeling. Tr. at 323. Dr. Franyutti noted that Plaintiff appears partially credible and is able to perform household duties, take care of

her son, and is able to drive. Tr. at 325. Dr. Franyutti noted that Dr. Rezaian found that Plaintiff was not a candidate for gainful employment. Tr. at 326. Dr. Franyutti stated that he disagreed with Dr. Rezaian's assessment and concluded that Plaintiff can perform light work Tr. at 326.

On July 28, 2008, Plaintiff had a follow-up examination with Dr. Rezaian. Tr. at 369-72. Dr. Rezaian prescribed Methotrexate tablets for her psoriatic arthritis. Tr. at 369 & 371-72. Dr. Rezaian recommended weight loss to help with pain and slow down the progression of her arthritis. Tr. at 369.

On August 25, 2008, Plaintiff completed a daily activities questionnaire. Tr. at 166-70. Plaintiff said she lives with her mother and son. Tr. at 166. Plaintiff said her mother does most of the chores because Plaintiff usually is in too much pain. Tr. at 166. Plaintiff said her mom takes her grocery shopping and to her doctor appointments. Tr. at 166. Plaintiff said her mother cooks for her but Plaintiff is able to heat up T.V. dinners and make sandwiches. Tr. at 167. Plaintiff said she needs assistance getting in and out of the shower and spends the day in a recliner watching television. Tr. at 167. Plaintiff said she enjoys reading non-fiction books and biographies, and occasionally her friends from Virginia come to visit. Tr. at 167-68. Plaintiff said she is able to handle money, pay bills, that she has an active driver's license. Tr. at 168. Plaintiff said she falls asleep in her recliner around 5:00 a.m. until her son wakes her up by 10:00 a.m. Tr. at 169. Plaintiff stated that when she worked she had good attendance, hardly missed a day, arrived on time, and required no frequent breaks or rest periods. Tr. at 170. Plaintiff said she was able to maintain her work routine and was capable of concentrating on work for long periods of time. Tr. at 170. She used to get along "great" with her co-workers and supervisors. Tr. at 170.

On November 13, 2008, Plaintiff had a routine exam with Dr. Lobaton. Tr. at 345-47. Dr.

Lobaton found Plaintiff's psychiatric as positive for anxiety, depression, and feelings of stress and insomnia. Tr. at 345. Dr. Lobaton stated that Plaintiff was negative for sadness. Tr. at 345. Dr. Lobaton further found Plaintiff's psychiatric as appropriate for affect and demeanor, normal speech pattern, and grossly normal memory. Tr. at 346. Dr. Lobaton recommended a graduated exercise program, stopping smoking, and weight loss. Tr. at 346. Dr. Lobaton scheduled a follow-up visit in four months. Tr. at 346.

On November 25, 2008, Plaintiff had a follow-up examination with Dr. Rezaian. Tr. at 354-58. Dr. Rezaian diagnosed psoriatic arthritis, ankle joint swelling, hand joint swelling, wrist joint swelling, trochanteric bursitis, back muscle spasm, epicondylitis, generalized stiffness, sacroiliac joint inflamation, psoriasis, depression, and headaches. Tr. at 354. Dr. Rezaian stated that Plaintiff appears to be getting worse compared to before. Tr. at 354. Dr. Rezaian noted that Plaintiff's symptoms do improve to some extent with hot shower, bath, or heat. Tr. at 355. Dr. Rezaian found Plaintiff's psychiatric mood and affect as normal and appropriate to the situation. Tr. at 358. She was oriented to person, place, and time. Tr. at 358. Plaintiff's physical exam revealed a current weight of 237 pounds and she is 5 feet, 9 inches tall. Tr. at 357. Plaintiff's blood presure was 106 / 61 and her pulse was 65. Tr. at 357. Dr. Rezaian noted that she is a 25 year old female who appears pleasant, in no apparent distress, and is overweight. Tr. at 357. Dr. Rezaian recommended a treatment plan including local steroid injections, Ketoprofen, and nonsteroidal anti-inflammatory drugs as needed. Tr. at 354. Dr. Rezaian stated that Plaintiff may need treatment disease modifying drugs (DMARDs) if her arthritis becomes worse. Tr. at 354. Dr. Rezaian recommended Ambien for insomnia and to continue Percocet because it is helping with her pain and has no serious side effects. Tr. at 354. Dr. Rezaian recommended weight loss and a regular exercise program to help with pain

and maintain muscle tone. Tr. at 354.

On December 10, 2008, Plaintiff had a follow-up examination with Dr. Rezaian. Tr. at 348-51. Plaintiff reported that she has not noticed a change in her symptomatology after discontinuing her treatment with Methotrexate. Tr. at 348.

On December 10, 2008, Dr. Rezaian completed a form for the West Virginia Department of Health and Human Resources (DHHR). Tr. at 352-53. Dr. Rezaian indicated his prior diagnosis of psoriatic arthritis, fibromyalgia, and trochanteric bursitis. Tr. at 352. Dr. Rezaian stated that Plaintiff's prognosis was "fair." Tr. at 352. Dr. Rezaian noted that Plaintiff's incapacity / disability is expected to be permanent. Tr. at 352. Dr. Rezaian found that Plaintiff does not need someone to stay in the home with her on a continuous basis, and that Plaintiff if able to care for children under age six. Tr. at 352. Dr. Rezaian listed that Plaintiff is able to lift up to 15 pounds occasionally, sit and stand for up to one hour, and walk as tolerated. Tr. at 353. Dr. Rezaian wrote that Plaintiff is not a candidate for employment. Tr. at 352.

### (2) The ALJ's Review of the Record from 2009

On January 20, 2009, Plaintiff had a physical examination with Dr. Rezaian. Tr. at 394-99. Dr. Rezaian noted that her psoriatic arthritis is unchanged from her prior exam. Tr. at 394. Dr. Rezaian noted that her sacroiliac joint inflammation causes her back pain at night but does improve with activity. Tr. at 394. Dr. Rezaian noted that Plaintiff has good attention to hygiene and body habitus. Tr. at 398. Dr. Rezaian recommended a treatment plan with Topamax as it appears to be effective in her case. Tr. at 394. Dr. Rezaian noted that there is no evidence for active synovitis at this time and no need for treatment with DMARDs. Tr. at 394. Dr. Rezaian recommended to continue with Percocet as it is helping with less pain and no significant side effects. Tr. at 394. Dr.

Rezaian noted that Plaintiff's dermatologic history was negative for lupus. Tr. at 395. Dr. Rezaian further recommended weight loss reduction by an increase in activity and cutting back on calorie intake. Tr. at 394. Dr. Rezaian stated that Plaintiff would benefit from a regular exercise program to help with pain, maintain muscle tone, and prevent de-conditioning. Tr. at 394. Dr. Rezaian found that overall Plaintiff does not seem to have made much progress. Tr. at 394.

On January 20, 2009, Dr. Rezaian wrote a note "To Whom It May Concern" that Plaintiff is under his care for psoriatic arthritis, and that due to her current medical condition, she is "not a candidate for gainful employment." Tr. at 393.

On January 21, 2009, at the ALJ hearing, Plaintiff testified that in 2003 she worked for Mantech as a senior accounts payable technician for a large government firm. Tr. at 39. Plaintiff said she worked at a desk, used a computer, talked on the telephone, did filing, packed banker's boxes, filed banker's boxes, opened the mail, disbursed the mail, and did check runs. Tr. at 39. She said she did "so many different things from bottom level to my senior accounts payable level." Tr. at 39. Plaintiff said she has not had any injections for pain, other than for childbirth. Tr. at 39. Plaintiff testified that she can only lift one or two pounds, stand for five minutes, sit for ten minutes, and walk short distances. Tr. at 42-43. Plaintiff carries a cane, but it was not prescribed by a doctor. Tr. at 43-44. Plaintiff testified that she does not do any grocery shopping, cleaning, yard work, gardening, exercise, or any activities outside of the home. Tr. at 45. Plaintiff said she does not provide any of the care for her son and only goes to the doctor's office. Tr. at 45. Plaintiff said she only socializes with her mother and son. Tr. at 45. Plaintiff testified that she can brush her teeth and use the bathroom by herself, but she needs help brushing her hair and dressing herself. Tr. at 46. Plaintiff said she had physical therapy in March 2008, but she was unable to finish and it did not help. Tr.

at 46-47. Plaintiff said she has only had one appointment for psychiatric treatment and that she has never had any psychiatric hospitalizations. Tr. at 48 & 50. Plaintiff testified that she has never seen a doctor for problems with her memory or concentration. Tr. at 52. The ALJ asked Plaintiff if her depression medications was helping her, and Plaintiff responded:

> No, I, no. I, I don't feel like that I, I feel, my doctors told me that I'm depressed because of my pain because I can't do the things that I used to do and because I'm trying to adjust to the disabilities and everything like that. But to me, I don't feel like I'm, you know, a basket case or, you know, so to speak...So I'm taking it [depression medication]. I'm doing it as my doctor says and taking the medicine he prescribes but I can't tell one way or the other if it's, if it's working or not because to me my mind is fully functional. It's my body that's not functional.

*See* Tr. at 50-51. Plaintiff said that her hands and arms work okay and she can move her fingers and dial the telephone. Tr. at 44. Plaintiff later testified that she has no feeling in her fingers and that she is constantly dropping her cigarettes. Tr. at 53-54. Plaintiff said she shares a bedroom with her son. Tr. at 54. Plaintiff said she spends all day in bed watching cartoons with her son. Tr. at 55. She said she showers every four days and sits down on a chair while showering. Tr. at 56. At bedtime she may read to her son. Tr. at 56.

On February 26, 2009, Plaintiff had a mental status examination with Harry W. Hood, M.S., a State Agency psychologist. Tr. at 400-06. Mr. Hood noted that Plaintiff has good dress and hygiene and walks with a cane. Tr. at 400. Plaintiff stated that she had a normal childhood. Tr. at 400. Plaintiff reported that her mental treatment history consists of seeing Dr. Bakhtiar on one occasion at the East Ridge Health System. Tr. at 401. Dr. Bakhtiar prescribed medication for insomnia and depression. Tr. at 401. Plaintiff said she has had sciatic nerve problems since age 14. Tr. at 401. Plaintiff reports smoking six cigarettes per day. Tr. at 401. Plaintiff's current medications

are Zoloft, Seroquel, Trazodone, Ketoprofen, Topamax, Percocet, Mirapex, Prilosec, and Flector Patch. Tr. at 401. Plaintiff dropped out of Hedgesville high school at age 15 and enrolled in Job Corp at age 16. Tr. at 402. Plaintiff obtained her GED and a culinary arts certificate. Tr. at 402. Plaintiff reported that she was on the honor roll in high school and was a top student in Job Corp. Tr. at 402. Mr. Hood described Plaintiff as an overweight young woman with observed mobility impairments and a need to stand frequently related to reported back pain. Tr. at 402. Mr. Hood said Plaintiff was cooperative, her speech was clear, she was oriented to present times four, her mood appeared depressed, and her affect was generally broad with several instances of crying. Tr. at 402. Mr. Hood said her stream of thought was well-organized with no evidence of delusions, phobias, or obsessions. Tr. at 402. Mr. Hood said Plaintiff's judgment was fair and that she reported suicidal thought without a plan or intent to harm herself. Tr. at 402. Mr. Hood found her immediate memory and her remote memory to be within normal limits. Tr. at 402. Mr. Hood found her recent memory to be moderately deficient, with Plaintiff recalling two of the four stimulus words. Tr. at 402. Mr. Hood found Plaintiff's concentration to be mildly deficient and her task persistence and pace to be within normal limits. Tr. at 402. Mr. Hood noted that Plaintiff's social skills were appropriate during the interview. Tr. at 402. Plaintiff reported that she gets up at 2:00 p.m., takes her medication, and will lay in bed all day. Tr. at 403. Plaintiff said she only eats cereal because she does not want to bother her mother to fix other food. Tr. at 403. Plaintiff said she spends time with her three year old son, helping him learn games and watching television. Tr. at 403. She goes to sleep at 8:00 a.m. (in the morning) with medication. Tr. at 403. Mr. Hood diagnosed depressive disorder, not otherwise specified. Tr. at 403. Mr. Hood made this diagnosis based on Plaintiff's observed depressed mood, observed crying with reports of experiencing depression and crying on a daily basis, low energy

levels, feelings of frustration and lack of self-worth related to her physical being. Tr. at 403. Mr. Hood noted that it would appear that the depression is related to her physical disorder but it seems to be more severe than could be explained with an adjustment reaction. Tr. at 403. Mr. Hood said that her prognosis is poor because she is not in [mental health] treatment. Tr. at 403. Mr. Hood said that Plaintiff is competent to manage her own financial affairs. Tr. at 403. Mr. Hood found that Plaintiff has a mild restriction for understanding and remembering simple instructions, carrying out simple instructions, and the ability to make judgments on simple work-related decisions. Tr. at 404. Mr. Hood found that Plaintiff has a mild restriction in interacting appropriately with the public, supervisors, and co-workers. Tr. at 405. Mr. Hood found that Plaintiff has a moderate restriction in understanding and remembering complex instructions, carrying out complex instructions, and responding appropriately to usual work situations and to changes in a routine setting. Tr. at 404-05. Mr. Hood found that Plaintiff has a marked restriction in the ability to make judgments on complex work-related decisions. Tr. at 404. Mr. Hood concluded that Plaintiff has a mild to moderate impairment in memory and concentration. Tr. at 404.

### (3) Conclusion by the ALJ as to Plaintiff's Credibility

After considering the evidence in the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably produce her alleged symptoms, but Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible. Tr. at 23. The ALJ found that:

> [T]he claimant's self-reported activities of daily living are inconsistent with an individual experiencing totally debilitating symptomatology...the claimant testified that she performs no household chores and that her activities are limited to lying down all day, watching television with, and reading to, her three-year-old son, and caring for the majority of her personal needs independently, such

as showering. However, there is no evidence of any muscle atrophy on physical examination, which suggest the claimant moves about on a fairly regular basis and that she performs more activities than reported. While the claimant's testimony indicates a marked curtailment of even simple, daily activities, the evidence as a whole fails to substantiate any good cause for such total isolation and inactivity except for the claimant's own preference. In this regard, it is noted that the claimant previously reported that her activities included driving, breast feeding her son, reading non-fiction books and biographies whenever possible for fun, cooking a few times a week, preparing meals for herself or her son, going grocery shopping a few times a month with carrying assistance from her mother, going to doctor's appointments with child-care assistance from her mother, handling her own money, and paying her own bills...

With regard to further assessing the claimant's credibility...the clinical and objective findings rebut the claimant's contention that she is totally disabled from all forms of gainful employment. While her discomfort may restrict very strenuous physical exertion, it does not preclude all work activity.

Tr. at 23 & 25. Substantial evidence supports the ALJ's finding that Plaintiff was not entirely credible.

### (4) Conclusion by the ALJ as to the Opinion of the State Agency Psychologist

Plaintiff contends that the ALJ erred in rejecting the opinion of Harry W. Hood, M.S., the state agency psychologist. Pl. Doc. 11 at 1, 8-9 & 11. The ALJ reviewed Plaintiff's medical history, credibility, pain symptoms, and daily activities to determine whether the evidence in the record supported, and was consistent with, the opinion of the state agency psychologist. Tr. at 17-26. The ALJ found as follows:

As to the opinion of Mr. Hood regarding the claimant's ability to respond appropriately to usual work situations and to changes in a routine work setting, it is noted that Mr. Hood nonetheless reported that the claimant exhibited average judgment and that she was only mildly restricted in the ability to make judgments on simple work-related decisions. It is also noted that the claimant is able to drive, as well as sleep in the same room with, and look after, her three-year-

old son each night, notwithstanding her mental disorder. Moreover, her condition appears to have been adequately controlled with psychotropic medication. Indeed, she has not required any partial or inpatient hospitalization, intensive case management services or mobile therapy services, and she only recently attended an initial session of psychotherapy. Accordingly, diminished weight is afforded the above-referenced opinions of...Mr. Hood insofar as they suggest an inability to perform any work activity.

Tr. at 26. Plaintiff contends that the ALJ rejected the opinion of the state agency psychologist based on his own lay opinion. Pl. Doc. 11 at 9. In reviewing Plaintiff's mental impairment, the ALJ found:

[I]n February 2008, Dr. Lobaton reported that the claimant had a normal mental status. In addition, the claimant has never been hospitalized for a mental condition. Indeed, until recently, her depressive disorder appears to have been adequately controlled with psychotropic medication. To be sure, she only recently attended an initial session of psychotherapy. It is also noted that the claimant has not required any intensive case management or mobile therapy services.

Tr. at 18. After fully reviewing Plaintiff's medical history, credibility, pain symptoms, and daily activities, the ALJ found that the record did not support, and was not consistent with, the opinion of the state agency psychologist. Tr. at 17-26. Substantial evidence supports the ALJ's finding to give diminished weight to the opinion of the state agency psychologist, insofar as it suggests an inability to perform any work activity. Tr. at 26.

### (5)      Residual Functional Capacity Assessment Conclusion by the ALJ

Plaintiff contends that the ALJ failed to find any nonexertional limitations, such as chronic pain, resulting from Plaintiff's psoriatic arthritis or fibromyalgia. Pl. Doc. 11 at 1 & 10-11. The ALJ found as follows:

[W]ith regard to the claimant's fibromyalgia and psoriatic arthritis, there is no evidence of motor or sensory loss, reflex abnormality, muscle atrophy, persistent or significant disturbance of gait or station, or extensive psoriatic lesions of the skin. There is also no evidence

of significant degenerative / arthritic abnormality of the spine or joints to substantiate the claimant's complaints of totally debilitating symptomatology...

Moreover, there is no evidence that the claimant has ever been prescribed any other pain modalities, such as a TENS unit or a brace, nor has she ever been referred to a pain management specialist or to a psychologist / psychiatrist for assistance in dealing with her pain. Finally, the Administrative Law Judge notes that the claimant has not required aggressive treatment such as injections, respiratory therapy or oxygen supplementation, nor has she required frequent hospital confinement / emergency room care or surgical intervention for her conditions, notwithstanding her complaints of disabling symptomatology.

Tr. at 23-24. The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 17-26. Substantial evidence supports the ALJ's residual functional capacity assessment that Plaintiff can perform light work.

### 4. Step Four: Compare Residual Functional Capacity Assessment to Determine whether the Plaintiff Can Perform Past Relevant Work

At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. 20 C.F.R. § 404.1520(a).

Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it. 20 C.F.R. § 404.1560(b).

Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment...with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled. *See* 20 C.F.R. § 404.1520(f).

The ALJ found that Plaintiff is unable to perform her past relevant work as a senior accounts payable technician / file clerk / administrative assistant, and dispatcher (medium / semi-skilled to skilled, sedentary to light / semi-skilled to skilled, respectively) because she is limited to no more than simple, unskilled tasks due to her depressive disorder. Tr. at 26.

5. **Step Five: Consider Residual Functional Capacity Assessment, Age, Education, and Work Experience to Determine if the Plaintiff Can Perform Any Other Work**

> At the fifth and last step...
>
> [i]f we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1560(c). At the final step of the disability analysis, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity assessment to determine whether Plaintiff could perform any other work. Tr. at 26-27. The ALJ noted that Plaintiff was 22 years old at the time of her disability application, which makes her a younger individual as defined in the Social Security Act. Tr. at 26. *See* 20 C.F.R. § 404.1563 (age as a vocational factor). The ALJ found that Plaintiff has a high school education and transferability of job skills is not material to the determination of disability. Tr. at 26. *See* 20 C.F.R. § 404.1564 (education as a vocational factor); *see also* 20 C.F.R. § 416.968(d) (transferability of job skills).

Plaintiff contends that the ALJ's finding that she can only perform simple, unskilled tasks due to her mental impairment was a nonexertional limitation and necessitated the use of vocational

expert testimony. Pl. Doc. 11 at 1-2 & 9-11; Pl. Doc. 14 at 1-3.

> We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

*Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). The ALJ noted that Plaintiff's nonexertional limitations have little or no effect on the unskilled light work occupational base. Tr. at 27. Therefore, Plaintiff's nonexertional limitation of being able to perform simple, unskilled tasks does not rise to the level of a nonexertional impairment, and vocational expert testimony was not necessary.

After considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in the national economy that the Plaintiff can perform. Tr. at 27. Substantial evidence supports the ALJ's decision that Plaintiff can perform work in the national economy.

> Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 529. **Ultimately, it is the duty of the administrative law judge reviewing a case, and *not* the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.** *King*, 599 F.2d at 599. "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist*, 538 F.2d at 1056-57; "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock*, 483 F.2d at 775. **"The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"**

*See Hays*, 907 F.2d at 1456 (emphasis added). Therefore, this reviewing Court will uphold the ALJ's decision that Plaintiff can perform light work because it is supported by substantial evidence.

In conclusion, the ALJ found that based on the Plaintiff's application filed on October 3, 2007, the Plaintiff is not entitled to a period of disability or disability insurance benefits. Tr. at 28. The Court finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform work in the national economy.

### III.       RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[12]**, **DENY** Plaintiff's Motion for Summary Judgment **[10]**, and **AFFIRM** the Decision of the Administrative Law Judge. The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Report and Recommendation. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: September 2, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE